IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2013 Session

## KIMBERLY LOU USELTON ᴇᴛ ᴠɪʀ, TERRY TWAYNE USELTON
v.
## JESSICA WALTON ᴀɴᴅ CLINTON BRANDON WOODARD

An Appeal from the Chancery Court for Dickson County
No. 2011-CV-484     Larry J. Wallace, Chancellor

No. M2012-02333-COA-R3-CV - Filed June 21, 2013

ALAN E. HIGHERS, P.J., W.S., DISSENTING

This is a case involving the Grandparent Visitation Statute in which the grandparents unquestionably played a significant role in the child's life.

The grandparents live approximately half a mile from the child. Bella is their only grandchild. From the time the child was one year old, the child visited the grandparents several times each week and made weekly overnight visits with the grandparents. Her third, fourth and fifth birthdays were celebrated at the home of the grandparents. The mother and other family members were invited and welcomed on these occasions. The child was taken on numerous vacation trips with the grandparents. The grandparents regularly made visits to the child at her school. This continued for several years.

The defining events in this case transpired over a very brief period of time in November and December, 2011. After mother materially limited their long-standing visitation schedule, the grandparents filed a petition for grandparent visitation which was served on Mother on December 23, 2011. The grandparents had visitation with the child on December 25, 2011. Mother, however, instructed grandparents to return the child earlier than previously agreed, and grandparents initially protested, but subsequently complied. On December 26, 2011, Grandfather sent a text message to Mother requesting to see the child. Mother responded that Bella would not be returning to their home for visits. Mother also removed grandparents from the approved list for visitors at school. The grandparents had no further visitation with the child until this matter was heard by the trial court in May 2012.

The Grandparent Visitation Statute is implicated when "'visitation is opposed by the custodial parent or parents.'" *Huls v. Alford* No. M2008-00408-COA-R3-CV, 2008 WL 4682219, at *8 (Tenn. Ct. App. Oct. 22, 2008) (quoting Tenn. Code Ann. § 36-6-306). Opposition must be shown because, if there is no opposition to visitation, there cannot be any resulting "danger of substantial harm to the child," as required by the Grandparent Visitation Statute. *Id.* The trial court in the case at bar found that "there has been opposition to visitation and as such the petition is proper."

The majority has taken a curious stance in this case. It finds the Grandparent Visitation Statute is inapplicable because grandparents rely "on events that occurred *after* they filed this lawsuit seeking court-ordered visitation." The majority effectively concludes that because there was not sufficient opposition to visitation *prior* to the petition for visitation being filed, it is irrelevant that the Mother terminated the relationship between the child and the grandparents *after* the petition was filed. The majority notes that grandparents "cite no authority" for their position, but it is perhaps even more compelling that the majority cites no authority for its novel and far-reaching ruling on the Grandparent Visitation Statute. There is nothing in the text of the Grandparent Visitation Statute, or in the cases applying it, that commands such an untenable result.

In fact, the analysis utilized by the majority is inconsistent with *Angel v. Nixon*, No. M2010-00554-COA-R3-CV, 2010 WL 4483915 (Tenn. Ct. App. November 8, 2010). It is a case with many similarities to the case *sub judice,* as **t**he child grew up attending weekly functions at the home of the paternal grandmother. After the father died in August 2008, the relationship between Mother and Grandmother grew strained. Grandmother filed a petition for grandparent visitation on October 21, 2008. Mother answered, denying that she opposed visitation with Grandmother, and she requested that Grandmother cease all contact with Mother or else she would seek a restraining order. Mother permitted Grandmother to have restricted and supervised visitation with the child on three occasions during the pendency of the proceedings. She filed a motion to dismiss Grandmother's visitation petition stating that she was not opposed to visitation and Grandmother therefore, was not entitled to a hearing. There is no record of the motion being heard before trial. The trial court granted Grandmother's petition for visitation. Mother filed a timely appeal, alleging again that she did not oppose visitation and therefore, Grandmother could not proceed on the petition. Judge Clement, writing for our court, explained: "A parent opposes visitation, in the context of this action, when visitation is denied totally and *when visitation is technically not opposed, but where the frequency and/or conditions imposed by the parent on the visitation are such that it equates to a denial of visitation.*" (emphasis supplied, citation omitted). The language could scarcely be more applicable to the present case.

In determining whether there was in fact opposition to visitation, the court in *Angel* looked at the totality of the circumstances, including conduct that occurred *after* the filing of the petition for grandparent visitation. The court noted that: (1) Grandmother had one visit in the grocery store parking lot prior to the filing of the petition, (2) Mother had threatened to seek a restraining order after the petition was filed, and (3) the Grandmother's three visits after the petition were filed "were so limited and uncomfortable that they amounted to a technical denial [of visitation]." The court commented: "The foregoing facts [some occurring *after* the petition was filed] fully support the trial court's finding that Mother opposed Grandmother's visitation." Notably, the court did not hold that opposition to visitation had been shown based solely upon the pre-petition facts. The court did not place any special emphasis on the pre-petition facts, nor did it discount the post-petition facts. It certainly did not hold, or even suggest, that post-petition facts could only be considered to "bolster or contradict" a showing of opposition to visitation that had already been made based solely on pre-petition conduct (as the majority holds).

Thus**,** I am not persuaded that the majority's analysis is consistent with *Angel*, as the majority argues.

The mother in the instant case was served on December 23, 2011. On December 26, 2011, she advised grandparents that Bella would not be coming back to their home. The grandparents had no further visitation until after the trial on May 31, 2012. Despite these facts, the majority holds that the grandparents' petition should be dismissed because they failed to carry "their burden of demonstrating that Mother opposed Grandparents' visitation with Bella."

According to the scenario posed by the majority, the grandparents should have dismissed their lawsuit, notwithstanding the complete and total denial of visitation, and immediately re-filed while relying on the identical proof adduced in their pending lawsuit, so that the events discussed would all be *prior* to the institution of their complaint. This would seem to be a mockery of judicial economy.[1]

In the pending case, the grandparents had a very special relationship with the child, visitation had been not only denied but terminated, and the trial court wisely considered the evidence and issued a ruling. The decision of the majority is that in order to rely on pre-petition conduct, the grandparents must re-file, re-try, and re-litigate all of the same proof.

---

[1]The majority dismisses my observation that its analysis would encourage the grandparents to dismiss and re-file, but the point stands. If grandparents can rely only on pre-petition conduct (unless post-petition conduct is a continuation), grandparents could rely on such conduct only by re-filing their petition. I believe such a holding would be counter-productive to judicial economy.

This does not seem consistent with the aim of the statute or our ruling in *Angel v. Nixon* (supra).

Nothing is gained in this case by distinguishing opposition that occurred before the petition was filed and opposition that occurred within three to four days after the petition was filed. The fact is, the grandparents previously had visitation with the child several times during the week, every week, and at least one night every weekend, and then, suddenly, they had none.[2]  In view of all these circumstances, this is a case that should be decided on the merits rather than dismissed because of a three to four day differential.

I would hold that the statute applies and that the case should be remanded for the trial judge to state with particularity his reason for finding that denial of visitation would cause substantial harm to the child.

_____

ALAN E. HIGHERS, P.J., W.S.

---

[2]The majority ignores the reality of the situation in denying the grandparents in this case had generous visitation "and, then, suddenly, they had none."  We cannot obscure the fact that grandparents, who live less than a mile away, did not see Bella even once after mother said she would not be coming back to grandparents' home, until the trial court granted visitation.